SHARON SHOEMAKER, Plaintiff-Appellant, v. RUSH-PRESBYTERIAN-ST. LUKE'S MEDICAL CENTER, Defendant-Appellee.

First District (2nd Division) No. 1—88—2919

Opinion filed August 29, 1989.

Emory Andrew Tate & Associates, Ltd., of Chicago (Robert L. Schroeder, of counsel), for appellant.

Davis, Barnhill & Galland, of Chicago (George F. Galland, Jr., and Paul Strauss, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff-appellant, Sharon Shoemaker, appeals from an order of the circuit court granting defendant-appellee, Rush-Presbyterian-St. Luke's Medical Center (Rush), summary judgment in a personal injury action. She contends that the circuit court erred in: (1) not affording her sufficient time to answer the motion for summary judgment; (2) granting summary judgment where a genuine issue of fact existed; and (3) granting summary judgment despite Rush's duty to prevent injury caused even by natural accumulations of water in its building.

Plaintiff's left leg had been amputated just below the knee in June 1984. In August 1984, she had been fitted for a prosthesis. In September 1984, she was a graduate nursing student at Rush.

On September 29, 1984, at about noon, plaintiff entered one of Rush's buildings, the Professional Building. On that day, she was not wearing her prosthesis, but was walking with the aid of crutches. She took the elevator to the fourth floor of the Professional Building. As she exited the elevator, she put her crutches on the floor inside the elevator and her foot on the floor outside the elevator. When she put her crutches down the next time on the floor outside the elevator, the left crutch went out from under her and she fell and struck her stump, causing the injury which gave rise to this lawsuit.

Plaintiff was deposed on November 6, 1987. She stated that it had been raining on the day of the accident from the time she left her home in the morning. She had fallen four hours earlier, in another location, due to the accumulation of water. She noticed that the sidewalks were wet, that people were tracking water into Rush's building, and that they were shaking off their coats and umbrellas inside the building. Plaintiff recalled that the floor of the elevator was wet. She described the floor where she fell as either "linoleum or polished concrete or something." She stated that there was a small lobby in front of the elevators which was wet. She described the water on which she fell as "little puddles, sprinkles, anywhere from half an inch wide to two inches wide." She stated that if there was a handrail outside the elevator, she would not have used it.

A motion for summary judgment, pursuant to section 2—1005 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par.

2—1005), was filed by Rush on March 30, 1988. Copies of pertinent portions of plaintiff's deposition, the complaint, and an affidavit of the building operator for the Professional Building were attached to the motion. The building operator stated that no nursing classes occurred in the building; that no rehabilitation facilities were located within the premises, such that it would be likely that a person would walk in on crutches or use prosthetic devices; and that there were handrails along the hallways.

On August 25, 1988, the circuit court considered the briefs and evidentiary material which had been filed and heard argument on the motion. The court then granted Rush's motion for summary judgment. In rendering its decision, the trial court found that the facts were not in dispute and that "no duty was owed to this plaintiff by this defendant to remove the natural accumulations of water upon which she slipped."

It is from this order that on August 26, 1988, plaintiff appealed to this court.

## I

██ Arguing that the motion was insufficient as a matter of law, plaintiff initially filed a motion to strike the motion for summary judgment. Plaintiff argues that after the trial court denied her motion to strike, it should have then allowed her an opportunity to answer the motion. Rush maintains the trial court gave plaintiff more than ample opportunity to contest the motion for summary judgment.

The record shows that plaintiff was afforded sufficient opportunity to respond to the motion for summary judgment. Rush filed its motion for summary judgment on March 30, 1988. Plaintiff filed her motion to strike based on legal insufficiency, on June 2, 1988. On June 20, 1988, the court denied plaintiff's motion to strike. On the same day, the record shows that the court explained that if plaintiff's basis for opposing the summary judgment was due to its legal insufficiency and if she were relying upon facts not in the record, then she was to file counterevidentiary material under section 2—1005 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.) Pursuant to plaintiff's request for leave to file a supplemental answer, the court granted her, in accordance with section 2—1005, any time up until August 25, 1988, the date the court set for arguments concerning the motion for summary judgment. The record indicates that no supplemental material was filed by plaintiff.

Plaintiff failed to file anything which might show a triable issue. She was given adequate opportunity to do so. The trial court there-

fore did not err when it granted summary judgment for Rush when no counteraffidavits or counterevidentiary material was filed by plaintiff. The circuit court followed correct procedures in determining whether there was any genuine issue of material fact.

## II

Plaintiff contends that the trial court erred when it entered summary judgment in favor of Rush when there was a genuine issue of fact concerning whether the accumulation of water upon which she fell was natural in origin. She argues that Rush's motion for summary judgment was insufficient as a matter of law because Rush failed to establish that the origin of the water was in fact a natural accumulation of water tracked in from outside. For the first time on appeal, plaintiff suggests that the accumulation of water described in her deposition may have been the result of some maintenance procedure, and not from the rain dripping off of persons' umbrellas, coats, and other articles.

In response, Rush contends that the trial court correctly based its decision about the source of the water from the evidentiary material before the court, especially plaintiff's own deposition in which she described the circumstances surrounding her fall. Rush asserts that the court properly concluded that the water was rainwater tracked in by pedestrians. Moreover, Rush argues that plaintiff has waived her current argument of "other causes" because she did not raise it in the trial court.

■ In order to recover as a consequence of a fall on ice, snow, or water, plaintiff must establish that the accumulation was unnatural in origin and was created directly or indirectly by Rush. (*Bernard v. Sears, Roebuck & Co.* (1988), 166 Ill. App. 3d 533, 535, 519 N.E.2d 1160, citing *Galivan v. Lincolnshire Inn* (1986), 147 Ill. App. 3d 228, 229, 497 N.E.2d 1331; see also *Lohan v. Walgreens Co.* (1986), 140 Ill. App. 3d 171, 488 N.E.2d 679; *Gilberg v. Toys "R" Us, Inc.* (1984), 126 Ill. App. 3d 554, 467 N.E.2d 947; *McCann v. Bethesda Hospital* (1980), 80 Ill. App. 3d 544, 400 N.E.2d 16.) While plaintiff need not prove her case at the summary judgment stage, she is required to come forward with some evidentiary facts or material to show that the water upon which she slipped was of unnatural origin. (*Bedeker v. School District No. 40* (1981), 92 Ill. App. 3d 618, 416 N.E.2d 68; *Gehrman v. Zajac* (1975), 34 Ill. App. 3d 164, 340 N.E.2d 184; *Byrne v. Catholic Bishop* (1971), 131 Ill. App. 2d 356, 266 N.E.2d 708.) In the absence of such a showing, summary judgment for defendant is appropriate since the court owes no duty to reason some remote fac-

tual possibility. *Gilberg v. Toys "R" Us, Inc.* (1984), 126 Ill. App. 3d 554, 558, 467 N.E.2d 947.

 This court is bound to take cognizance of and consider only those issues which are supported by the record. (*Rasky v. Department of Registration & Education* (1980), 87 Ill. App. 3d 580, 586, 410 N.E.2d 69, *appeal dismissed* (1981), 454 U.S. 806, 70 L. Ed. 2d 75, 102 S. Ct. 78.) While plaintiff is correct in her assertion that summary judgment should not be granted if documents on file show that there is a genuine issue as to material fact (*Burnley v. Moore* (1963), 41 Ill. App. 2d 156, 190 N.E.2d 141), there is no evidence in the record, including the memorandum that was filed in the trial court by plaintiff, that shows that "other maintenance procedures" possibly caused the water on the fourth floor.

The only evidentiary materials in the record are the depositions of plaintiff and the building operator. The trial court based its decision on plaintiff's own description of the circumstances surrounding the fall. There is no evidence in the record that would allow a fact finder to find that the water upon which plaintiff slipped was of unnatural origin. Therefore, there was no genuine triable issue of material fact. Summary judgment was correctly granted.

### III

 Plaintiff relies upon the factors set forth in *Lance v. Senior* (1967), 36 Ill. 2d 516, 224 N.E.2d 231, in arguing that the circuit court should have held that Rush had a duty to remove even natural accumulations of water: (1) whether the occurrence or accident was foreseeable; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against the injury from occurring; and (4) the consequences of placing that burden upon the defendant. *Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231; see also *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 526, 513 N.E.2d 387.

Here, the trial court considered the *Lance* criteria and found that its third and fourth factors were not satisfied. Specifically, the court reasoned that it was against public policy interests in a large metropolitan area to require building owners with elevators to remove natural accumulation of tracked-in rainwater. We agree, and we note that courts have uniformly held that landowners charged with exercising an ordinary degree of care have no duty to clean up natural accumulations of water tracked into buildings from the outside. *Bernard v. Sears*, 166 Ill. App. 3d 533, 519 N.E.2d 1160; see also *Lohan v. Walgreens Co.*, 140 Ill. App. 3d 171, 488 N.E.2d 679; *Gilberg v. Toys*

*"R" Us, Inc.*, 126 Ill. App. 3d 554, 467 N.E.2d 947; *Walker v. Chicago Transit Authority* (1980), 92 Ill. App. 3d 120, 416 N.E.2d 10.

Furthermore, the trial court noted that an elevator is considered a common carrier (*Steiskal v. Marshall Field & Co.* (1908), 238 Ill. 92, 96, 87 N.E. 117) and, as such, the operator is charged with exercising the highest degree of care consistent with the operation of business. (*Springer v. Ford* (1901), 189 Ill. 430, 434, 59 N.E. 953.) Additionally, the passenger-carrier relationship does not terminate until the passenger has had a reasonable opportunity to reach a place of safety. *Pharr v. Chicago Transit Authority* (1984), 123 Ill. App. 3d 205, 208, 462 N.E.2d 753, citing *Loring v. Yellow Cab Co.* (1975), 33 Ill. App. 3d 154, 337 N.E.2d 428.

The trial court correctly noted that based on plaintiff's deposition testimony, her injury occurred while she was in the act of alighting from the elevator itself, and therefore, Rush owed the highest degree of care and duty to her. Notwithstanding that high standard, the court properly granted summary judgment. This court has held that a common carrier held to the highest degree of care has no duty to clean up natural accumulations of water. *Serritos v. Chicago Transit Authority* (1987), 153 Ill. App. 3d 265, 505 N.E.2d 1034, *appeal denied* (1987), 116 Ill. 2d 576, 515 N.E.2d 127 (CTA has no duty to keep steps free of naturally accumulated water or snow); see also *Galivan v. Lincolnshire Inn*, 147 Ill. App. 3d 228, 497 N.E.2d 1331 (hotel has no duty, although held to the highest degree of care, to remove naturally accumulated snow).

■ Plaintiff now asserts that the trial court failed to consider other less burdensome means of prevention and should have considered requiring Rush to utilize rugs or carpeting to meet its duty. As Rush correctly asserts, plaintiff did not raise this contention in the trial court. Arguments not raised in the trial court are beyond this court's scope of review and are waived. *Witek v. Leisure Technology Midwest, Inc.* (1976), 39 Ill. App. 3d 637, 640, 350 N.E.2d 242.

However, plaintiff's new argument also fails to meet the *Lance* criteria. (*Lance v. Senior* (1967), 36 Ill. 2d 516, 518, 224 N.E.2d 231.) Requiring building operators to carpet lobbies and halls on each elevator stop would place a tremendous burden on them without any assured results. Plaintiff ignores the fact that wet rugs, just like wet floors, are often alleged by plaintiffs to have been the causes of their falls. See *Bernard v. Sears*, 166 Ill. App. 3d 533, 519 N.E.2d 1160; *Lohan v. Walgreens*, 140 Ill. App. 3d 171, 488 N.E.2d 679.

Finally, since there was no evidence in the record showing that the absence of rugs or "other devices" caused plaintiff to suffer her

fall, summary judgment was properly granted. As the court held in *Bernard v. Sears*, a plaintiff cannot resist summary judgment in a slip-and-fall case simply by arguing about the possible effect of a rug, without offering any evidence to support the argument. (*Bernard v. Sears*, 166 Ill. App. 3d 533, 519 N.E.2d 1160.) The court did not err in granting summary judgment since no facts were offered to support the argument she first raises in this court.

The record shows that the court carefully considered the evidentiary material and reasonably concluded, from all the facts and circumstances surrounding the fall, as described by plaintiff herself, that the water accumulated naturally and that Rush owed no duty to remove or prevent it.

For the foregoing reasons the circuit court judgment is affirmed.

Affirmed.

BILANDIC, P.J., and HARTMAN, J., concur.